**In re the MARRIAGE OF Dorothy Sue FORBES, Appellee–Petitioner.**

**and**

**Thomas Edward Forbes, Respondent,**

**Merrill Lynch, Third Party Appellant.**

**No. 45A05–0301–CV–36.**

Court of Appeals of Indiana.

July 22, 2003.

Eugene M. Feingold, Steven P. Kennedy, Law Offices of Eugene M. Feingold, Munster, IN, Attorneys for Appellant.

Larry D. Stassin, Sachs & Hess, P.C., Hammond, IN, Attorney for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Third–Party Appellant, Merrill Lynch, appeals the trial court's Order of Con-

tempt and subsequent denial of its Motion to Correct Error.

We affirm.

## ISSUES

Merrill Lynch raises three issues on appeal, which we consolidate and restate as follows:

1. Whether the trial court erred in finding that pursuant to Ind. Trial Rule 5(B)(2) Merrill Lynch had notice of the Restraining Order and that transfer of funds to Thomas Edward Forbes (Husband) constituted contempt; and

2. Whether Dorothy Sue Forbes (Wife) properly served the Restraining Order on Merrill Lynch in accordance with the Indiana Rules of Trial Procedure.

## FACTS AND PROCEDURAL HISTORY

Husband and Wife were parties in an action for Dissolution of Marriage in the Lake Superior Court sitting in Gary, Indiana. Following the Decree of Dissolution, on August 30, 2001, Wife obtained a Court Order for Attachment of Pension Benefits and/or Restraining Order (Restraining Order) directed to Merrill Lynch enjoining and restraining Merrill Lynch from dispersing any monies to Husband or his agents from Husband's Merrill Lynch Retirement Account until further order of the court.

Barbara Alvarez, (Secretary Alvarez), the legal secretary of Wife's counsel, mailed the Restraining Order, addressed to Merrill Lynch, 8585 Broadway, Merrillville, Indiana 46410. Secretary Alvarez mailed the Restraining Order via the United States mail. At the time that the Restraining Order was mailed to Merrill Lynch, two local phone books, one for 2001, and one for 2002–2003, reflected that the address for Merrill Lynch was 8585 Broadway, Merrillville, Indiana 46410.

Merrill Lynch occupied these premises through February 23, 2001. Following this date, Merrill Lynch moved to a different office at 707 East 80th Place in Merrillville, Indiana.

Thus, at the time notice of the Restraining Order was mailed to Merrill Lynch at 8585 Broadway, Merrill Lynch had not occupied those offices for over six months. The Restraining Order was not sent by certified mail, nor was a return receipt requested. Although Wife's counsel's office did not receive any verification that Merrill Lynch received the notice, the notice was not returned to Wife's counsel's office.

In September of 2001 or early October of 2001, Husband withdrew his proceeds from his Merrill Lynch IRA pension account. On January 22, 2002, the trial court entered an order providing for the attachment of pension benefits held by Merrill Lynch. On or around February 5, 2002, Merrill Lynch received notice of this Order. At this time, there were no funds in the pension account, due to Husband's withdrawal in 2001.

On July 3, 2002, Wife filed a Petition for Contempt Citation against Merrill Lynch alleging that Merrill Lynch had transferred funds to Husband in violation of the Court's August 30, 2001 Restraining Order. On the same date a hearing was held. At the hearing, Merrill Lynch presented evidence that it had never received notice of the Restraining Order prior to the transfer of the funds to Husband. James A. Gingerich (Gingerich) testified that throughout 2001 he was the resident manager and highest local officer of Merrill Lynch in Merrillville. Gingerich testified that at no time prior to February 2002, did he or any other employee of Merrill Lynch have notice or knowledge of the Restraining Order.

At the same hearing, Secretary Alvarez testified that the envelope accurately reflected the address of Merrill Lynch as set forth in the two editions of the phone book. Gingerich also acknowledged during his testimony that Merrill Lynch did receive some mail addressed to 8585 Broadway subsequent to August 2001. Wife presented further evidence that the mailing was not returned by the post office as undeliverable or forwarding order expired.

On November 8, 2002, the trial court entered an Order of Contempt finding Merrill Lynch in contempt and ordering Merrill Lynch to pay Wife the sum of $9,363.31 and attorney fees in the amount of $1,500. The Order of Contempt stated, in pertinent part:

The Court being duly advised in the premises now **FINDS AND ORDERS** as follows:

1. That on or about August 30, 2001, this Court entered an Order restraining Merrill Lynch from disbursing any monies from [Husband's] account with Merrill Lynch.

2. That Barbara A. Alvarez, secretary for [Wife's counsel], testified that on or about August 30, 2001, she mailed a copy of said Order to Merrill Lynch, 8585 Broadway, Merrillville, Indiana 46410.

3. That Ms. Alvarez further testified that said envelope was never returned as undeliverable.

4. That [Gingerich] testified that sometime in February, 2001, Merrill Lynch moved their offices and that he never received the Restraining Order.

5. Evidence was presented by [Wife] that Merrill Lynch's address in the 2001 phone book was listed as 8585 Broadway, Merrillville, Indiana 46410.

6. Further, evidence was presented by [Wife] that other subsequent mailings to Merrill Lynch at 8585 Broadway were received by [Gingerich].

7. That on or about August 30, 2001, the balance in respondent's Merrill Lynch account was approximately $9,363.31.

8. That sometime between the entry of the August 30, 2001, Order and February 22, 2002, the money from the Merrill Lynch account was removed.

9. That [Wife] filed a Contempt Citation against Merrill Lynch on or about July 3, 2002.

10. The Court finds that pursuant to Trial Rule 5(B)2, Merrill Lynch had notice of the August 30, 2001, Order.

11. That the releasing of [Husband's] funds by Merrill Lynch constitutes a willful violation of this Court's Orders.

12. Merrill Lynch is ordered to turn over to [Wife] the total sum of $9,363.31 reflecting the value of the Merrill Lynch fund on or about August 30, 2001.

13. That in addition, Merrill Lynch is ordered to pay a portion of [Wife's] attorney fees in this matter.

Merrill Lynch is ordered to pay [Wife's counsel] the sum of $1,500.00, the same being reduced to judgment in his favor.

(Appellant's Br. pp. 2–3). On December 2, 2002, Merrill Lynch filed its Motion to Correct Error. On December 16, 2002, Wife filed her Response to Merrill Lynch's Motion to Correct Error. On December 23, 2002, a hearing on Merrill Lynch's Motion to Correct Error was held. At the hearing, the trial court denied Merrill Lynch's Motion to Correct Error.

Merrill Lynch now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

■■■ A trial court is vested with broad discretion to determine whether it will grant or deny a motion to correct error. *Volunteers of America v. Premier Auto Acceptance Corp.*, 755 N.E.2d 656, 658 (Ind.Ct.App.2001). The trial court's decision comes to us cloaked in a presumption of correctness, and the appellant has the burden of proving that the trial court abused its discretion. *Id.* A trial court has abused its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable inferences therefrom. *Id.* In making our determination, we may neither reweigh the evidence nor judge the credibility of witnesses. *Id.* Instead, we look at the record to determine if: (a) the trial court abused its discretion; (b) a flagrant injustice has been done to the appellant; or (c) a very strong case for relief from the trial court's [order] ... has been made by the appellant. *Id.*

### II. *Service of the Restraining Order*

First, Merrill Lynch argues that the trial court erred in relying on T.R. 5(B)(2) when issuing the Contempt Order. Specifically, Merrill Lynch asserts that T.R. 5 applies to the service and filing of pleadings and other papers upon parties already of record in the proceedings. Merrill Lynch contends that, since it is not a party to the proceeding between Husband and Wife, T.R. 5 does not apply to it. Additionally, Merrill Lynch maintains that it did not have actual notice of the Restraining Order and, therefore, cannot be held in contempt for violating the Restraining Order.

Alternatively, Wife asserts that the trial court properly issued Merrill Lynch the Contempt Order. Although Wife concedes that T.R. 5 does not apply to Merrill Lynch; nevertheless, Wife argues that under T.R. 65(D), Merrill Lynch was bound by the terms of the Restraining Order. Specifically, pursuant to T.R. 65(D), a non-party is bound to the terms of a Restraining Order, if that party had actual notice of the order by personal service or otherwise. Wife maintains that Merrill Lynch had actual notice of the Order and, therefore, was bound by the terms of the Restraining Order. We agree.

■■■ At the outset, we note that the trial court's finding based upon T.R. 5(B)(2) was error. T.R. 5(B)(2) only applies if a party is represented by counsel or is a party to the action. *See* T.R. 5(B)(2). Here, the original action is between the Wife and Husband. Thus, Merrill Lynch was not a party to the record. However, we find that this error was harmless because the evidence supported the trial court's general judgment. *See Kranda v. Houser–Norborg Medical Corp.*, 419 N.E.2d 1024 (Ind.Ct.App.1981) (we will affirm the trial court where it reaches the correct result for the wrong reasons.) Accordingly, we will address Merrill Lynch's argument that it did not receive notice of the Restraining Order.

■■■ It is generally true that notice of an injunction or restraining order must be served on the person or persons enjoined or restrained by the order. I.C. § 34–1–10–7. There exists, however, an exception to this general rule. Where it can be shown that a person had actual knowledge of the restraining order or injunction, he may be held liable for violating the provisions of the order. *Bottoms v. B & M Coal Corp.*, 405 N.E.2d 82, 89 (Ind.Ct.App. 1980). There is no presumption that affected persons have actual knowledge of an order; knowledge must be established from the facts presented to the trial court. *Id.* Actual knowledge may be proven by

circumstantial evidence, or simply inferred from the facts. *See id.*

◼ In the present case, Merrill Lynch argues that it did not receive notice of the Restraining Order. However, our review of the record indicates otherwise. In particular, the record shows that Merrill Lynch did have an account held in the name of Husband and Dorothy B. Forbes, Husband's mother, jointly, that was frozen by Merrill Lynch. The record reveals that at the hearing there was an exchange by the trial court and counsel for Merrill Lynch, wherein the trial court specifically asked Merrill Lynch whether or not the August 30, 2001 Restraining Order was responsible for the account held by Husband to be frozen. In response, Merrill Lynch failed to produce evidence to the trial court that would indicate that the account held by Husband was frozen as a result of any other order except the Restraining Order issued on August 30, 2001. The burden to prove that actual notice was not provided rests with Merrill Lynch, and must be done by clear and convincing evidence. *See Citizens Gas & Coke Utility v. Wells,* 150 Ind.App. 78, 275 N.E.2d 323, 326 (1971). We find that Merrill Lynch has failed to meet this burden.

Furthermore, the record reflects that Merrill Lynch had actual notice of the January 22, 2002 Order of Attachment, but nevertheless disregarded this Order. Specifically, the record shows that at the time Merrill Lynch received the January 22, 2002 Order of Attachment on February 5, 2002, the account had approximately $7,216.54 in the account. However, the account statement as of February 22, 2002, indicated a balance of approximately $32.00. Thus, Merrill Lynch disbursed funds to Husband after they received notice of the January 22, 2002 Order of Attachment. Based upon the foregoing, we find that the evidence shows by clear and

convincing evidence that Merrill Lynch had actual notice of the Restraining Order and, nevertheless, violated that Restraining Order. *See Citizens Gas & Coke Utility,* 275 N.E.2d at 326. Accordingly, we find that the trial court did not abuse its discretion in holding Merrill Lynch in contempt for violating the Restraining Order. *See Bottoms,* 405 N.E.2d at 89; *Volunteers of America,* 755 N.E.2d at 658.

III. *Service of the Restraining Order*

◼ Next, Merrill Lynch alleges that Wife did not comply with T.R. 4 when serving Merrill Lynch with notice of the Restraining Order. Specifically, Merrill Lynch asserts that Wife did not send the Restraining Order by certified mail to Merrill Lynch's present address or address the document to the highest available officer at the Merrill Lynch office in Merrillville. Conversely, Wife maintains that Merrill Lynch can still be held liable for violating the Restraining Order even without proper service. *See Reed Sign Service, Inc. v. Reid,* 755 N.E.2d 690, 697 (Ind.Ct.App.2001) (where court held that a party may be liable for violating an injunction even without proper service upon that party.)

Although Wife's counsel sent the Restraining Order to Merrill Lynch's old address, we are nevertheless persuaded that Wife's counsel exercised all reasonable care dictated by the Indiana Trial Rules to inform Merrill Lynch of the Restraining Order. Specifically, the record reveals that a copy of the Restraining Order was mailed to Merrill Lynch at their last known address. Despite the fact that Merrill Lynch had not occupied those premises for over six months, the record reveals that Merrill Lynch did receive some mail forwarded to their new address that was sent to their old address. Moreover, Merrill Lynch did not make any reasonable efforts to update the local phone

books with their new change of address. Thus, notice to the address at 8585 Broadway was likely to reach Merrill Lynch, even where Merrill Lynch failed to take the steps necessary to update the listings available to the public.

Nonetheless, Merrill Lynch argues that, since Wife did not send a certified copy of the Restraining Order or address the envelope to the highest-ranking local officer of Merrill Lynch in Merrillville, service was not valid. We disagree. Under Indiana Trial Rule 4.15(F), no summons or service of process shall be set aside if either is reasonably calculated to inform the defendant of the impending action against him. *Reed Sign Service, Inc.*, 755 N.E.2d at 696. Thus, T.R. 4.15(F) will prevent service of process, which is technically deficient from defeating the personal jurisdiction of the court. *Id.* Therefore, we find that Wife's attempt at service satisfy the requirements of T.R. 4.15(F) for service of a temporary restraining order. *See id.*

### CONCLUSION

Based on the foregoing, we find that the trial court properly issued Merrill Lynch an Order of Contempt. Further, we conclude that the trial court properly denied Merrill Lynch's Motion to Correct Error.

Affirmed.

SHARPNACK, J., and BARNES, J., concur.